IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD

| | |
|---|---|
| UNITED STATES OF AMERICA, and the STATE OF WEST VIRGINIA, by and through the WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES C. JUSTICE COMPANIES, INC., JAMES C. JUSTICE, II, and HIGH MOUNTAIN LIVING, LLC,<br><br>Defendants. | Civil Action No. 1:15-cv-16018 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE CONSENT DECREE

Plaintiffs the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and the State of West Virginia, by and through the West Virginia Department of Environmental Protection ("WVDEP"), submit this Memorandum of Law in support of their Motion to Enforce the Consent Decree ("Decree") that this Court entered on February 25, 2016. ECF No. 13. Defendants James C. Justice Companies, Inc., and James C. Justice, II ("Justice Defendants"), entered into the Decree to resolve alleged violations of Sections 301(a) and 404 of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311(a) and 1344, in

1

connection with the unpermitted construction of twenty impoundments along a 1.5 mile stretch of Turkey Creek and an unnamed tributary in Monroe County, West Virginia.[1]

The Justice Defendants timely paid the civil penalties and – after EPA imposed conditions to remedy Defendants' deficient plans for removing the unauthorized dams from the streams – satisfactorily performed the restoration work.  However, as described in detail below, the Justice Defendants have entirely failed to comply with two other key requirements of the Decree: (1) submitting to EPA twice-yearly post-restoration monitoring reports, beginning in May 2019, and (2) to record deed restrictions to permanently protect the restored portions of the property.  The Justice Defendants should have completed at least six post-restoration monitoring reports since May 2019, yet have not submitted a single one.  The deed restrictions have been overdue since August 24, 2016.  These elements of the Decree are relatively modest undertakings, yet are vital to ensuring the successful and enduring restoration of the streams that the Justice Defendants impounded in violation of the Clean Water Act.  In addition, compliance with these elements by Defendants is a necessary prerequisite to termination of the Consent Decree.

Despite Plaintiffs' numerous good faith attempts to prompt compliance, including through telephone calls and written correspondence, the Justice Defendants have remained unresponsive.  Accordingly, and as set forth in more detail in the accompanying proposed Order, the Plaintiffs respectfully request that the Court enforce the Consent Decree by requiring the Justice Defendants to: (1) within 30 days, record deed restrictions that are in accordance with

---

[1] Defendant High Mountain Living, LLC, fully resolved its liability in this matter through a separate Stipulation and Order, entered by this Court on February 25, 2016.  The Justice Defendants are solely responsible for performing the restoration-related requirements of the Consent Decree that are the subject of this Motion to Enforce.

2

Paragraph 29 and Appendix B of the Decree; (2) within 60 days, submit to EPA an initial post-restoration monitoring report assessing whether any additional restoration work is necessary; (3) beginning in April 2022, and for ten years thereafter at the intervals specified in the proposed Order, submit to EPA additional post-restoration monitoring reports; (4) reimburse the United States' costs of litigation, including reasonable attorneys' fees, in seeking enforcement of the Consent Decree; and (5) grant any other monetary and injunctive relief the Court deems appropriate.

## BACKGROUND

### I. Statutory and Regulatory Background

The Clean Water Act is intended to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To achieve this goal, Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant, including dredged or fill material, by any person into waters of the United States, unless authorized by a Department of the Army permit under Section 404, 33 U.S.C. § 1344. Sections 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b), (d), authorize EPA to bring suit for civil penalties and injunctive relief for violations of Section 301(a).

### II. Factual Background

#### A. The Site and Alleged Clean Water Act Violations

Beginning in approximately 2011, on private property located near McGlone, in Monroe County, West Virginia, the Justice Defendants or persons acting on their behalf constructed a series of twenty dams across an approximately 1.5 miles stretch of Turkey Creek and one of its unnamed tributaries (the "Sites"). ECF No. 1 at 5, ¶ 24, Exhibit A (depicting dam locations).

The Justice Defendants did not obtain a Clean Water Act Section 404 permit from the U.S. Army Corps of Engineers prior to constructing the dams. *Id.* at 6, ¶ 27.

B. **The 2016 Consent Decree**

On December 10, 2015, the United States and the State of West Virginia, by and through its Department of Environmental Protection, simultaneously filed a Complaint and lodged a proposed Consent Decree that, once entered, would fully resolve the allegations against the Justice Defendants. ECF Nos. 1, 5. Following a public comment period, Plaintiffs sought entry of the proposed Decree. ECF No. 12. The Court entered the Decree on February 25, 2016. ECF No. 13.

Among the principal substantive terms of the Consent Decree were requirements for the Justice Defendants to: (1) pay a $220,000 civil penalty within 30 days of entry, Consent Decree ¶ 18; (2) submit to EPA within 120 days a detailed restoration plan "designed to restore the Sites to approximate pre-disturbance original conditions," *id.* ¶ 23; (3) perform restoration work in accordance with that plan once approved by EPA in consultation with WVDEP, including the removal of fill material, restoration of stream channels, planting appropriate native species, and grading and stabilizing disturbed soils, *id.*; and (4) record deed restrictions to protect the restored areas from future disturbance, *id.* ¶ 29.

C. **Consent Decree Implementation**

The Justice Defendants timely paid the civil penalties in full. *See* ECF No. 18. In April 2016, the Justice Defendants submitted a document purporting to satisfy the Decree's stream restoration plan requirements. That April 2016 plan incorporated by reference an earlier plan, from September 2014. Over the course of the next year, EPA communicated to the Justice Defendants why those proposed plans were deficient in several key respects. *See, e.g.*,

4

Declaration of Katelyn Almeter ("Almeter Decl."), Exs. 12, 13.  Ultimately, EPA determined that the most expeditious solution to the impasse would be to approve the previously-submitted plan with EPA-added conditions that would remedy the deficiencies.  *See* Consent Decree ¶ 24 ("[a]fter review of the Restoration Plan, EPA . . . [may] approve the Plan upon specified conditions . . . ."); *see* Almeter Decl. ¶ 5, Ex. 1 (EPA March 12, 2018 "Approval [of the Restoration Plan] With Specified Conditions" ("Restoration Plan Approval")).  The Restoration Plan Approval is "deemed incorporated into [the] Consent Decree, and the Justice Defendants shall implement the Plan as approved or modified by EPA."  Consent Decree ¶ 26.  The Restoration Plan Approval included conceptual-level guidelines for performance of the restoration work, and well as general parameters for post-restoration monitoring and performance criteria.

      Following Site visits on July 31 and August 28, 2018, EPA confirmed that the Justice Defendants' contractors had removed the dams and restored the stream in accordance with the Restoration Plan Approval.  Almeter Decl. ¶¶ 7–8, Ex. 3.  In two follow-up letters in August and October 2018, EPA reminded the Justice Defendants of their obligations under Paragraph 23 of the Decree and the Restoration Plan Approval to provide a post-work monitoring plan.  Almeter Decl. ¶ 8, Ex. 2.  However, the Justice Defendants never responded to those letters, never submitted a plan for post-restoration monitoring, and never submitted any other reports or documents related to post-restoration monitoring.  Three additional follow-up letters from EPA in September 2019, March 2020, and April 2021, regarding the overdue monitoring-related requirements likewise went unanswered.  Almeter Decl. ¶¶ 9–14, Exs. 4, 5, 11.  Other, less formal, EPA staff communications to representatives of the Justice Defendants between May

5

2020 and February 2021 were also unsuccessful in prompting compliance. Almeter Decl. ¶¶ 11–13.

As with the post-work monitoring requirements, the United States has provided the Justice Defendants with several written reminders regarding their obligation to record deed restrictions covering the restored areas of the Site. Written reminders regarding that requirement were included in six letters between 2017 and 2021. Almeter Decl., Exs. 1, 3, 4, 11, 12, 13. In 2018, EPA learned informally of the Justice Defendants' potential desire to place structures in Turkey Creek at unspecified locations to enhance fishing conditions. In a March 2018 letter, while noting that any such proposed action would be subject to a separate Clean Water Act Section 404 permitting process with the U.S. Army Corps of Engineers, EPA indicated that it would be willing to consider a potential deviation from the standard deed restriction format (in Appendix B of the Consent Decree) upon receipt of specific proposed language. Almeter Decl. ¶ 16, Ex. 1 at 2. The Justice Defendants did not respond with any proposed language, or any other communications, regarding the deed restriction.

## ARGUMENT

**I.  The Court Should Order the Justice Defendants to Promptly Comply with Their Long-Overdue Obligations Under the Consent Decree to Monitor and Protect the Stream Restoration Work.**

The Justice Defendants must heed all terms of the Consent Decree that they entered into in exchange for resolving their liability for violating the Clean Water Act. *Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir. 1985) ("A defendant who has obtained the benefits of a consent decree – not the least of which is the termination of the litigation – cannot then be permitted to ignore such affirmative obligations as were imposed by the decree."). The Justice Defendants have not offered any excuse for their longstanding noncompliance with the Consent Decree's

requirements to monitor and safeguard the long-term success of the stream restoration work. Rather, they appear to have simply ignored those aspects of the Decree, notwithstanding the United States' persistent efforts to remind them of their obligations and resolve the issue without seeking judicial relief. *See supra* at 4–6. Unfortunately, absent a further order from this Court mandating prompt compliance, Plaintiffs expect that the Justice Defendants will continue to flout the terms of the bargain they struck and that this Court ordered.

Plaintiffs' narrowly-tailored request for relief, as explained in detail below, is simply that the Court compel the Justice Defendants to promptly satisfy the existing restoration-related terms of the Consent Decree. There is no question that the Court has the power to mandate compliance with the Consent Decree. Courts have inherent authority to enforce their own orders, including consent decrees. *See Frew v. Hawkins*, 540 U.S. 431, 440 (2004) ("[f]ederal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced"); *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 379 (1994) (ancillary enforcement jurisdiction permits a court to "manage its proceedings, vindicate its authority, and effectuate its decrees"). Moreover, here the Consent Decree specifically provides that the Court retains continuing jurisdiction to enforce its terms. Consent Decree ¶ 59.

### A. The Justice Defendants Must Submit Post-Restoration Monitoring Reports to EPA.

EPA's Restoration Plan Approval, including its conditions and timeframes, is an integral and fully-enforceable part of the Consent Decree. Consent Decree ¶ 26 ("Upon approval of a Restoration Plan (either with or without conditions or modifications by EPA ), the Restoration Plan will be deemed incorporated into this Consent Decree, and the Justice Defendants shall implement the Plan as approved or modified by EPA. . . . [W]ork at each Restoration Site shall

be executed in accordance with the approved schedule."). EPA's conditional approval included a requirement for post-restoration monitoring and quantitative success criteria to ensure that Defendants' restoration achieves instream conditions consistent with those in Turkey Creek prior to Defendants' unauthorized discharges. Almeter Decl., Ex. 1 at 4. The Justice Defendants belatedly finished removing the unlawful impoundments in 2019, but have not submitted any subsequent monitoring reports or otherwise demonstrated progress toward achieving the quantitative performance metrics for successful restoration of the stream to its pre-disturbance condition. *See* Almeter Decl. ¶¶ 8, 15.

In the months immediately following removal of the impoundments, the Justice Defendants should have reported to EPA whether additional restoration work was needed to accomplish the objectives of the Restoration Plan Approval. *See* Almeter Decl., Ex. 1 at 4 (requiring the Justice Defendants to assess and report to EPA, no later than May 2019, whether further restoration work would be needed to, for example, stabilize stream banks against erosion or reconnect the stream channel with the natural floodplain). The Justice Defendants did not submit any such report. Nor have the Justice Defendants submitted to EPA any of the additional monitoring reports due each spring and summer, beginning in 2019. *Id.*; Almeter Decl. ¶ 15. Those reports require macroinvertebrate sampling, photographs, and other information to help assess stream quality. *See* Almeter Decl., Ex. 1 at 4–5. That information is critical to evaluating whether the Justice Defendants' restoration has successfully restored Turkey Creek to its approximate pre-disturbance condition – and, if not, whether and what type of additional restoration or monitoring may be necessary. *See id.* at 5; Almeter Decl. ¶ 14.

Because the Justice Defendants have not substantively responded to any of the United States' many communications on this issue since 2019, it appears that a further Court order is

necessary to secure compliance with the Consent Decree. In addition, compliance with these elements of the Decree is a necessary prerequisite to termination of the Consent Decree. *See* Consent Decree ¶ 61.b. The original deadlines for monitoring have lapsed, but the schedule intervals and all other requirements remain valid. Accordingly, Plaintiffs respectfully request that the Court order the Justice Defendants to comply with the Restoration Plan Approval's monitoring report requirements as follows:

(1) within 60 days of the Court's order, submit to EPA an initial post-restoration assessment report that fully complies with the specified conditions in EPA's March 2018 Restoration Plan Approval (i.e., the assessment report that was originally due no later than May 1, 2019);

(2) beginning in April 2022, and for ten years thereafter unless the parties otherwise agree to a shorter period,[2] submit to EPA the periodic monitoring reports described in EPA's March 2018 Restoration Plan Approval (i.e., the monitoring reports that were originally due beginning in April and early July, 2019).

To eliminate any potential ambiguity regarding the specific details of this request for relief, the proposed Order accompanying this Motion and Memorandum includes in full the relevant text from EPA's March 2018 Restoration Plan Approval.

### B. The Justice Defendants Must Immediately Record Deed Restrictions Covering the Restored Portions of the Property.

To protect the restored streams, the Consent Decree restricts future activities at certain portions of the Site. Consent Decree ¶ 28. In those areas, the Decree prohibits the Justice Defendants from (for example) dredging, excavating, filling, draining or otherwise disturbing

---

[2] Nothing in the Consent Decree precludes the Justice Defendants from demonstrating that they have achieved the success criteria and seeking EPA's agreement to modify the ten-year monitoring period based upon that demonstration.

9

soils, vegetation, and/or water resources. *Id.* As an added measure "[t]o ensure that all reasonable steps are taken to prevent disturbance at the Sites," the Justice Defendants were also required to record deed restrictions within 180 days after entry of the Consent Decree. *Id.* ¶ 29. The Court entered the Decree on February 26, 2016, rendering the deed restrictions due no later than August 24, 2016. Despite providing the Justice Defendants with at least six written reminders of this obligation, *see* Almeter Decl. ¶ 16, the United States has not received notice that deed restrictions have been recorded. The United States therefore requests that the Court compel the Justice Defendants, within 30 days, to "make and record deed restrictions . . . for the Sites with the deed recording office for the county where the applicable parcel or parcels are located." Consent Decree ¶ 29. To comply with the Consent Decree, the deed restrictions "shall be substantially similar to the sample attached as Appendix B, and shall provide that each deed, title, or other instrument conveying an interest in the subject parcel shall contain a notice stating that the property is subject to th[e] Consent Decree and shall reference the recorded location of the Consent Decree and any restrictions applicable to the property under th[e] Consent Decree."[3] *Id.* The United States respectfully requests that the Court mandate immediate compliance with this long-overdue component of the Consent Decree.

## II. The Court Should Hold the Justice Defendants Liable for the United States' Costs of Bringing This Action to Enforce the Consent Decree, Including Attorneys' Fees.

The United States is "entitled to collect the costs (including attorneys' fees) incurred in any action necessary to enforce th[e] Consent Decree." Consent Decree ¶ 57. Accordingly, the

---

[3] As noted above, *supra* at 6, EPA in 2018 did note that it would be willing, subject to state, local and Clean Water Act permitting requirements, to consider a potential deviation from the standard format (in Appendix B of the Consent Decree) to accommodate Justice Defendants' desire to install structures to enhance fishing. Almeter Decl. ¶ 16. The Justice Defendants have not provided EPA with any such proposed language. *Id.*

10

United States respectfully requests that the Court compel the Justice Defendants' to reimburse the United States' costs associated with filing this Motion and Memorandum, and any subsequent proceedings. If the Court so orders, the United States will provide a specific accounting of such costs and expenses, including attorneys' fees.

Plaintiffs are hopeful that an Order from the Court based on this Motion to Enforce will be sufficient to fully remedy the Justice Defendants' noncompliance with the Consent Decree. However, should that not hold true, Plaintiffs reserve their rights to demand stipulated penalties,[4] or to seek other monetary or injunctive relief. *See Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 280 (4th Cir. 2002) ("[A] consent decree . . . may be enforced by judicial sanctions, including citation for contempt if it is violated."). Such additional requested relief could include proposed new substantive requirements in the Consent Decree as mitigation for longstanding and willful noncompliance. *See United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 249 (1968) (holding that a court may grant a plaintiff's request to modify a consent decree where "time and experience have demonstrated" that the decree "has failed to accomplish [the] result" it was "specifically designed to achieve."); *Federal Trade Commission v. Trudeau*, 662 F.3d 947, 949 (7th Cir. 2011) (upholding district court's grant of United States' motion to modify consent decree where the original decree's provisions to protect consumers from deceptive infomercials proved "too weak.").

---

[4] Plaintiffs are entitled to stipulated penalties of up to $3,000 per day for each Consent Decree violation, "which includes failing to perform any obligation required by the terms of this Consent Decree, including any work plan or schedule approved under this Decree, . . ." Consent Decree ¶ 46. Given the number of violations and the long duration of noncompliance, the amount of stipulated penalties would be substantial. Although Plaintiffs have thus far exercised their discretion not to demand stipulated penalties, they have not waived them. *See* Consent Decree ¶ 48.

# CONCLUSION

For the reasons set forth above, and as specified in greater detail in the Proposed Order filed concurrently with this Memorandum, Plaintiffs respectfully request that the Court enforce the Consent Decree by requiring the Justice Defendants to: (1) submit post-restoration assessment and monitoring reports to EPA as specified in the Proposed Order, (2) record deed restrictions covering the restored portions of the Site as required by the Decree, and (3) reimburse the United States for its costs, including attorneys' fees, incurred in seeking enforcement of the Decree.

Respectfully submitted,

Dated: September 8, 2021

FOR THE UNITED STATES OF AMERICA

TODD KIM
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

LISA G. JOHNSTON
Acting United States Attorney for the
Southern District of West Virginia

*/s/ Austin D. Saylor*
AUSTIN D. SAYLOR
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Phone: (202) 598-7867
austin.saylor@usdoj.gov

*/s/ Fred B. Westfall, Jr.*
FRED B. WESTFALL, JR.
Assistant United States Attorney
West Virginia State Bar No. 3992
300 Virginia Street East, Room 4000
Charleston, WV 25301
Phone: (304) 345-2200

Fax: (304) 347-5440
fred.westfall@usdoj.gov

FOR THE STATE OF WEST VIRGINIA

KATHERYN D. EMERY
Acting Director
Division of Water and Waste Management
West Virginia Department of Environmental
    Protection

*/s/ Scott Driver*
Scott Driver (WV Bar ID #9846)
West Virginia Department of Environmental
    Protection
601 57th Street Southeast
Charleston, West Virginia 25304
Telephone: (304) 926-0499
Facsimile: (304) 926-0461
charles.s.driver@wv.gov

# CERTIFICATE OF SERVICE

        I hereby certify that on this 8th day of September, 2021, I served the foregoing "Memorandum of Law In Support of Plaintiffs' Motion to Enforce Consent Decree" through the Court's CM/ECF system to the following counsel for Defendants:

Michael O. Callaghan (counsel for James C. Justice, II and James C. Justice Companies, Inc.)
Law Offices of Neely & Callaghan
1337 Virginia Street, East
Charleston, WV 25301
(304) 343-6500
mcallaghan@neelycallaghan.com

Stephen W. Ball
P.O. Box 1085
Beckley, WV 25802 (counsel for James C. Justice, II)
(304) 252-8528
steve@bluestoneindustries.com

                                                */s/ Austin D. Saylor*
                                                AUSTIN D. SAYLOR
                                                U.S. Department of Justice
                                                Environment and Natural Resources Division
                                                Environmental Defense Section
                                                P.O. Box 7611
                                                Washington, DC 20044
                                                Phone: (202) 598-7867
                                                austin.saylor@usdoj.gov